**John GARCIA, Plaintiff–Appellant,**

v.

**Roxy HUBER, Executive Director of the Motor Vehicle Division, Department of Revenue, State of Colorado, Defendant–Appellee.**

**No. 09CA1660.**

Colorado Court of Appeals, Div. IV.

Nov. 24, 2010.

Law Firm of Dineen Deel, Dineen T. Deel, Robert T. Bettenberg, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Cathern H. Smith, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CARPARELLI.

Plaintiff, John Garcia (driver), appeals the district court judgment affirming the finding by the Colorado Department of Revenue, Motor Vehicle Division (the Department), that, based on the Department's test result indicating his blood alcohol content was more than 0. 17, he is a "persistent drunk driver" under section 42–1–102(68.5), C.R.S.2010. Section 42–2–126(8)(e)(II), C.R.S.2010, establishes a presumption favoring the accuracy of an analysis done on behalf of a law enforcement agency when blood alcohol analysis results show blood alcohol content of 0.096 or more when a driver submits conflicting test results. We agree with driver's contention that this presumption does not apply to the determination of whether a person is a persistent drunk driver. Accordingly, we reverse the district court's judgment and remand for further proceedings.

## I. Background

On August 3, 2008, driver was involved in a motorcycle accident and was taken to the hospital. There, a state trooper arrested him based on the odor of alcohol on his breath, slurred speech, blood shot eyes, and inability to perform "roadside maneuvers." Driver agreed to give a blood sample for analysis.

Analysis of the blood sample by technicians at the Laboratory Services Division showed driver's blood alcohol content (BAC) was 0.174 grams of alcohol per 100 milliliters of blood. *See* § 42–1–102(8.5)(a), C.R.S.2010 (as relevant here, defining BAC as a "person's blood alcohol content, expressed in grams of alcohol per one hundred milliliters of blood as shown by analysis of the person's blood").

The Department issued a notice of revocation, and driver requested a hearing. Before the hearing, driver had an independent laboratory analyze the blood sample under section 42–2–126(8)(e)(II). Two analyses of the sample indicated a BAC of 0.162 and 0.163. Driver introduced these results at the hearing. However, the hearing officer relied on the results of the law enforcement agency's analysis and found that driver was a persistent drunk driver. In crediting the agency's results, the hearing officer relied on the presumption contained in section 42–2–126(8)(e)(II) favoring the accuracy of the law enforcement agency's analysis, concluding

[T]here is a statutory presumption as to the express consent .08 issue in favor of the official state test compared to the retest of blood when the state test is at least .096. However, [driver] argues that such presumption should not apply as to the .170 issue for persistent drunk driver status.... There is no logical merit to that argument and the fact of the retest result in this case is insufficient to rebut the statutory presumption in favor of the state test.

Driver appealed the hearing officer's decision to the district court. The district court affirmed, concluding that the plain language of section 42–2–126(8)(e)(II) applied any time an analysis of a driver's BAC was an issue at a revocation hearing. Driver now appeals the district court's judgment.

## II. Standard of Review

■ A court may reverse the Department's determination if it "exceeded its con-

stitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record." § 42–2–126(9)(b), C.R.S.2010. "We are in the same position as the district court in reviewing the Department's action in the revocation proceedings under the administrative record." *Baldwin v. Huber,* 223 P.3d 150, 152 (Colo.App.2009).

Statutory interpretation is a question of law that we review de novo. *Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 816 (Colo.App.2007). When interpreting a statute, our primary duty is to give effect to the intent of the General Assembly, looking first to the plain language. *Barnes v. Colo. Dep't of Revenue,* 23 P.3d 1235, 1236 (Colo.App. 2000). "Words and phrases should be given effect according to their plain and ordinary meaning . . . ." *Id.* We read the statute as a whole "to give 'consistent, harmonious and sensible effect to all of its parts,'" in accordance with the presumption that the legislature intended the entire statute to be effective. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (quoting *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo.2004)). "A statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People,* 90 P.3d 807, 811 (Colo. 2004).

## III. Applicability of Statutory Presumption

Driver contends that the section 42–2–126(8)(e)(II) presumption of accuracy applies only to revocation determinations and not to persistent drunk driver determinations. We agree.

### A. Statutory Provisions

The Uniform Motor Vehicle Law (UMVL), sections 42–1–101 to–4–2204, C.R.S.2010, contains the relevant statutory provisions at issue in this case. Article 2 of the UMVL is entitled "Drivers' Licenses." A person's drivers' license must be revoked if he or she drove with a BAC of 0.08 or more. *See* § 42–2–126(3), C.R.S.2010. The procedures and rules for hearings regarding license rev-

ocations are established in section 42–2–126(8). The remaining subsections of the statute concern other issues related to revocation. *See generally* § 42–2–126.

"When an analysis of the respondent's BAC is considered at a hearing," section 42–2–126(8)(e) establishes standards of proof regarding that evidence. When a hearing officer is considering conflicting BAC analyses, "there shall be a presumption favoring the accuracy of the [BAC] analysis done on behalf of the law enforcement agency" when threshold requirements are met. § 42–2–126(8)(e)(II). To meet those requirements,

- there must be a disparity between the results of a BAC analysis done on behalf of the law enforcement agency and that done on behalf of the driver;

- a preponderance of the evidence must show that (1) a qualified person, (2) properly conducted the analysis, (3) using properly working testing devices, and (4) the person was associated with a laboratory certified by the department of public health and environment; and

- the analysis done on behalf of the law enforcement agency must show the driver's BAC to be 0.096 or more.

*Id.*

### B. *Wiesner v. Huber*

In *Wiesner v. Huber,* 228 P.3d 973 (Colo. App.2010), a division of this court faced the same issue presented here under a previous version of the statute. There, the division applied a version of section 42–2–126 that was repealed as of July 1, 2008, before driver's violation in this case.

That version of the statute stated that "the sole issue at the hearing [was] whether, by a preponderance of the evidence, the person drove . . . when the amount of alcohol . . . in such person's blood was 0.08 or more." Ch. 137, sec. 1, § 42–2–126(9)(c)(I), 2007 Colo. Sess. Laws 503. It provided that there was a presumption favoring the accuracy of an agency BAC analysis "[w]hen the determination of the issue pursuant to this paragraph (c) is based upon an analysis of" the person's blood or breath. Ch. 236, sec. 5, § 42–2–126(9)(c)(II), 2004 Colo. Sess. Laws 783.

The *Wiesner* division concluded that "the terms 'the issue' and 'the sole issue' clearly referred to the revocation of a driver's license for a 0.08 blood or breath alcohol content," and that it was "apparent that the General Assembly intended the presumption of accuracy in BAC to apply to the 0.08 limit required for license revocation" and not to "persistent drunk driver" determinations. *Wiesner*, 228 P.3d at 975.

The division also reasoned that the statute made little mention of the "persistent drunk driver" status and that the statute's stated purposes focused on the revocation determination. *Id.* In addition, the division said the "presumption of accuracy is likely intended as a margin of error for the BAC requiring revocation." *Id.* at 976. It reasoned the "0.096 BAC presumption of accuracy is a reasonable margin of error for the 0.08 BAC revocation finding," but "because 0.096 is considerably lower than 0. 17, the presumption of accuracy does not represent a margin of error for the 'persistent drunk driver' finding." *Id.* In support, the division noted that the presumption level was lowered to 0.096 from 0.12 when the BAC level for revocation was lowered to 0.08 from 0.10. *See* Ch. 236, sec. 5, § 42–2–126(2)(a)(I)–(I.5), (9)(c)(III), 2004 Colo. Sess. Laws 782–84.

### C. Analysis and Conclusion

The analysis in *Wiesner* is not dispositive here because it concerned a different version of the statute. There, much of the division's analysis rested on the fact that the statute referred to "the issue" and "the sole issue" to be determined at the hearing, specifically whether the person drove with a BAC of 0.08 or more. *See Wiesner*, 228 P.3d at 975.

However, the current statute does not refer to "the issue" or "sole issue." Rather, the presumption applies "[w]hen an analysis of the respondent's BAC is considered at a hearing." § 42–2–126(8)(e). Although this language is broad, we nevertheless conclude that the presumption applies only to revocation determinations and not to "persistent drunk driver" determinations.

We conclude that applying section 42–2–126(8)(e) literally would lead to an illogical and absurd result that is well demonstrated in this case. The Department presented evidence that an analysis of driver's blood showed his BAC was 0.174. As was his right under section 42–2–126(8)(e)(II), driver introduced two additional analyses that indicated a BAC level 0.162 and 0.163, respectively. There is no dispute that all of the analyses were performed in a proper manner.

Having received conflicting evidence regarding a necessary factual determination, the hearing officer was required to evaluate the evidence and make a finding of fact. Here, the hearing officer afforded the Department's analysis a presumption of accuracy. However, all three analyses were properly performed by certified individuals on properly working machines, and they all showed a BAC of more than 0.096. The only difference was that one was performed on behalf of law enforcement. We conclude that, when determining the issue of *revocation*, it is logical and reasonable to favor a test that reflects a BAC 20% higher than the applicable 0.08 standard. However, when determining the issue of persistent drunk driving, it would be illogical and absurd to favor the Department's test if the evidence includes multiple tests properly performed by certified individuals indicating BAC of more than 0.096 but within 5% of the applicable 0.17 persistent drunk driver standard.

In addition, we find *Wiesner*'s reasoning concerning the margin of error on a revocation determination to be persuasive. The presumption operates logically with regard to revocation determinations. If a respondent challenges the fact that his or her BAC was not 0.08 or more and the Department introduces a properly performed analysis that shows 0.096 or more, then the statute establishes a standard of proof that the Department's analysis will be presumed correct because the operative threshold is 0.08, which is considerably lower than 0.096. In other words, if the Department introduces an analysis that is 20% higher than the threshold, then it is reasonable and permissible to favor its accuracy because of the large margin of error. This conclusion is supported by the fact that the General Assembly lowered the presumption level to 0.096 from 0.12 when it

lowered the revocation level to 0.08 from 0.10. We perceive no such relationship regarding the 0.17 level for persistent drunk drivers.

In addition, much of *Wiesner*'s reasoning still applies to the current statute. "[T]he stated purposes of section 42–2–126 focus on the revocation of a driver's license, including (1) providing highway safety by quickly revoking the license of those drivers with excess BAC, and (2) guarding against erroneous deprivation of the driving privilege without the opportunity for a full hearing." *Wiesner*, 228 P.3d at 975 (citing § 42–2–126(1)(a)–(b), C.R.S.2010). Similarly, as in *Wiesner*, the only subsections of section 42–2–126 in effect when driver was arrested that referred to a "persistent drunk driver" finding involved the additional penalties and requirements assessed for such a finding. *See* Ch. 79, sec. 1, § 42–2–126(3)(a)(II)(A), 2008 Colo. Sess. Laws 233 (effective July 1, 2008 until repeal on Jan. 1, 2009).

Accordingly, we hold that the presumption of accuracy favoring an analysis showing 0.096 or more BAC done on behalf of law enforcement does not apply to a "persistent drunk driver" determination.

### IV. Remand

The Department nevertheless asserts that the hearing officer did not abuse his discretion in determining that driver was a "persistent drunk driver" because there was competent evidence in the record for the hearing officer to conclude that driver's BAC was 0.17 or more. However, the hearing officer made no findings of fact regarding the accuracy of the Department's test or driver's differing test results. To the contrary, the hearing officer erroneously applied the statutory presumption when he determined that driver was a "persistent drunk driver."

Because the hearing officer did not make findings of fact regarding the reliability of the differing tests, we conclude that we must remand for the hearing officer to make a "persistent drunk driver" determination without employing the statutory presump-

tion. *See Wiesner*, 228 P.3d at 976 (reversing and remanding where hearing officer did not take differing test into account because of statutory presumption).

The judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

Judge DAILEY and Judge CRISWELL,* concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.